# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1836-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.A.M.,

     Defendant-Appellant.

_____

Submitted January 23, 2024 – Decided March 4, 2024

Before Judges Whipple and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 13-11-0950.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton Samuel Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

     Defendant J.A.M. appeals from a February 9, 2022 order denying his

petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

The circumstances leading to defendant's convictions for sexually assaulting his daughters, D.M. and E.M., are set forth in our unpublished opinion from defendant's direct appeal, State v. J.A.M., No. A-0928-16 (App. Div. Sept. 26, 2018) (slip op. at 1), and in the PCR judge's February 9 opinion. Thus, we need only summarize the salient facts.

In November 2013, defendant was indicted on the following charges: two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2) (counts one and five); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(l) (counts two and six); two counts of second-degree-sexual assault, N.J.S.A. 2C:14-2(c)(4) (counts three and seven); and two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts four and nine). He also was indicted for the additional offense of second-degree sexual assault, N.J.S.A. 2C:14-2(b), against E.M. (count eight).

Prior to trial, defendant moved to suppress the statement he gave to the police after his wife—the victims' mother—reported defendant was sexually abusing D.M. and E.M. The trial court denied the suppression motion.

During his 2015 jury trial, both victims, as well as defendant's wife,

testified against him. D.M. testified defendant began touching her breasts when she was thirteen years old and that he started touching her vagina on a weekly basis when she was fourteen. E.M. testified defendant began touching her breasts and thighs when she was eleven years old, and he started putting his fingers in her vagina once she turned thirteen. The girls also stated that when these incidents occurred, defendant told them he was checking for diseases and making sure they were virgins. Additionally, they testified they tried to fight back and told defendant to stop, but he ignored their pleas and at times, slapped them in the face.

After the State rested its case and defense counsel confirmed he did not want to call any witnesses, the judge inquired if defense counsel needed time to speak with defendant about testifying. Counsel responded, "I think we are ready to deal with that on the record right now." Thus, defendant was sworn and asked if he signed a waiver form entitled "Waiver Not To Testify." Defendant answered, "[t]hat is correct," but then stated he had "one question for [his] attorney." The judge took a brief recess to permit defendant to consult with counsel. When the hearing resumed, the judge questioned whether defendant "had enough time to speak to [his] attorney." Defendant answered, "[c]orrect."

Next, the judge asked if defendant was "choosing not to be a witness."

3

Defendant replied, "[t]hat is correct," prompting the following exchange:

> []COURT: And you understand that it's your constitutional right to remain silent, and that's what you're invoking at this point[,] is that correct?
>
> []DEFENDANT: That's correct.
>
> []COURT: And you're telling me when I give the charge that I will tell the jury that they are not to consider for any purpose or in any manner in arriving at their verdict the fact that you did not testify, nor should that fact enter into their deliberations . . . in any manner . . . . And that you are entitled to have the jury . . . consider all of the evidence and that you . . . are entitled to the presumption of innocence even if you do not testify as a witness.
>
>     . . . [Y]ou're giving me consent to give this charge to the jury and . . . this has been explained to you by your attorney. Is that all correct?
>
> []DEFENDANT: That is correct.
>
> []COURT: Is there anything that I've said here that you have a question [about] or you do not understand?
>
> []DEFENDANT: No, nothing.
>
> []COURT: So you understand everything?
>
> []DEFENDANT: Correct.
>
> []COURT: And you have no questions?
>
> []DEFENDANT: No.

In response to further questioning by the judge, defendant testified he

4

understood that when the jury returned, he could not "get up and testify." Accordingly, the judge admitted defendant's signed waiver into the record and "accept[ed] it as [defendant]'s knowing and voluntary decision not to testify."

Defendant's waiver included a proposed jury charge that read as follows:

> [J.A.M.] chose not to be a witness.
>
> It is the constitutional right of a defendant to remain silent.
>
> I charge you that you are not to consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify, nor should th[at] fact enter into your deliberations or discussions in any manner or at any time.
>
> The defendant is entitled to have the jury consider all of the evidence and he is entitled to the presumption of innocence even if he does not testify as a witness.
>
> I hereby consent to [the trial judge] giving the above charge to the jury, the significance of this statement having been explained to me by my attorney.
>
> [(Emphasis added).]

Defendant was found guilty on all counts but the eighth count (second-degree assault against E.M). He was sentenced in January 2016 to an aggregate thirty-year term, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2 on counts one, two, five, and six. In September 2018, we affirmed the trial

court's decision on his suppression motion and defendant's convictions but remanded for resentencing on limited issues. J.A.M., slip op. at 8-9.

Defendant was resentenced in February 2019, to an aggregate twenty-six-year term, subject to NERA on counts one, two, five, and six. In April 2019, the New Jersey Supreme Court denied defendant's petition for certification. State v. J.A.M., 237 N.J. 418 (2019).

In December 2020, defendant filed a pro se petition for PCR, alleging trial counsel was ineffective for "waiv[ing defendant's] right to be present during a crucial stage of trial without [defendant's] consent." Defendant also argued trial counsel was ineffective for "fail[ing] to ensure . . . the jury was properly instructed," and failing to object to the State's "damning" summation, which "border[ed on] official misconduct."

In November 2021, assigned counsel submitted a letter brief, as well as a supplemental letter brief, and a supplemental unsigned certification from defendant in support of the PCR petition. In PCR counsel's submissions, he contended "[t]rial counsel failed to fully investigate the case and communicate with [d]efendant, as well as represent [d]efendant at trial by raising objections." PCR counsel further argued "[t]rial counsel's cumulative errors denied [d]efendant his right to effective assistance of counsel."

PCR counsel also contended in the supplemental brief—without a corresponding certification from defendant—that "trial counsel was ineffective because [he] failed to object to the removal of a Latino juror at trial."[1] Additionally, PCR counsel newly argued—without a supporting certification from defendant—that "[d]efendant wanted to testify at trial[,] but trial counsel advised [d]efendant not to testify," and "[d]efendant would have credib[ly] testified that he never sexually assaulted his daughters and that their testimony was coerced and coached." In defendant's unsigned supplemental certification, he argued trial counsel's cumulative errors included counsel's failure to: interview witnesses; sufficiently communicate with defendant; and seek removal of a courtroom spectator who "stare[d] and glared at [defendant] throughout the trial."

During argument on the PCR petition in January 2022, the judge confirmed he reviewed PCR counsel's submissions, as well as defendant's unsigned certification. PCR counsel represented he would file a signed certification from defendant, identical to defendant's unsigned certification, at the conclusion of the hearing.

---

[1] The record reflects the trial judge initiated the removal of this juror, without objection from the State or defense counsel, after the judge concluded the juror was sleeping during the trial.

A-1836-21

On February 9, 2022, the PCR judge entered an order denying defendant's petition without an evidentiary hearing. In a twenty-seven-page opinion accompanying the order, the judge addressed defendant's multiple arguments and also set forth defendant's colloquy with the trial court wherein defendant confirmed his "[d]ecision to [n]ot [t]estify."

Regarding defendant's assertion that trial counsel was ineffective for failing to make timely objections at trial and object to "inflammatory statements" made during summations, the judge found "defendant d[id] not reference any specific statements made during the trial or during closing, which he claim[ed] w[ere] objectionable," nor did PCR counsel "direct the court to any [such] statements." Thus, the judge determined "[t]here was nothing specific raised . . . to support this [ineffective assistance of counsel (IAC)] claim."

The judge also concluded defendant provided no factual basis for his claim that trial counsel was ineffective for failing to interview defendant's two daughters. The judge noted that although "defendant elected to not testify," "defendant admitted to the police that he would frequently visit the two girls at night in their bedroom and . . . would use his fingers to inspect their vaginas to ensure . . . they were still virgins," a statement which "the jury clearly rejected . . . as justification for defendant's conduct." Additionally, the judge

found "neither . . . defendant nor [PCR counsel] provided the court with a certification from . . . [defendant's] wife or either daughter which supported [defendant's] assertion that any or all of the three would have testified differently . . . had [they] been interviewed by . . . defense counsel prior to trial." The judge observed that "[t]he two girls gave statements [about] the sexual assault to their mother, to the police, to the person who examined them[,] and at trial." Thus, he found "[t]here [wa]s no reason to believe that [had] defense counsel interviewed them . . . their testimony would have changed."

Next, the judge rejected defendant's claim that trial counsel was ineffective for failing to communicate with defendant, finding "[n]either . . . defendant nor [PCR] counsel suggest[ed] how more frequent conversations would have changed the trial defense or the outcome of the trial."

Turning to defendant's claim that trial counsel was ineffective for failing to seek the removal of a spectator at trial who "stared and glared" at defendant in the presence of the jury, the judge found PCR "counsel simply state[d] . . . defendant . . . raised this point" but "[n]o further argument was made to support this assertion." The judge stated that to baldly "assert that any spectator had an impact upon a jury without any facts to support such an assertion falls far below the standard needed" to establish a prima case of IAC.

A-1836-21

The PCR judge also found no merit to defendant's contention that a Latino juror "should not have been removed [during the trial merely] because she . . . briefly closed her eyes." The judge found "the record . . . confirm[ed] . . . [the] juror was excused because she fell asleep during the trial" and "defendant [wa]s unable to show how the removal prejudiced his case when the remaining [twelve] juror[s] who deliberated unanimously found him guilty of the majority of the charges."

Based on these findings, the judge concluded "[t]he defense . . . failed to establish either prong of the" two-prong test under Strickland v. Washington, 466 U.S. 668 (1984). Regarding the first prong—whether trial counsel's performance was deficient—the judge found "[t]here [w]as . . . no showing whatsoever that [defendant's] trial counsel was in any way even remotely deficient in his representation." The judge also concluded "[t]here [wa]s nothing more that defense counsel could have done to prevent a guilty verdict in light of defendant's own admission" to the police that he touched his daughters' vaginas.

Next, the judge determined defendant failed to meet the second Strickland prong, finding defendant did not "articulate[] how defense counsel's conduct prejudiced" him. The judge stated defendant did "not come close to showing . . . there [wa]s a reasonable probability that but for trial counsel's conduct, the result

10

of the trial would have been d[ifferent]." In finding no evidentiary hearing was warranted, the judge reasoned there were "no tactical decisions that trial counsel would have [had] to justify." Further, the judge rejected defendant's argument that he was entitled to an evidentiary hearing to explore trial counsel's failure to interview the victims. The judge explained:

> to get to the point where an evidentiary hearing would be necessary[,] . . . there would need to be some evidence that the girls would have testified differently . . . [had] trial counsel interviewed them. There is no such evidence. The suggestion is purely speculative and does not justify an evidentiary hearing.
>
> Likewise, the argument[s] regarding the handicapped juror, the allegedly (unspecified) inflammatory comment, and the [removal of the] Latino juror provide an insufficient factual basis . . . to conclude that an evidentiary hearing is required in this matter.

On appeal, defendant raises the following arguments:

POINT I

THE PCR COURT FAILED TO ADDRESS DEFENDANT'S ARGUMENT THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO THE FAILURE OF TRIAL COUNSEL TO CALL HIM AS A WITNESS TO TESTIFY IN HIS OWN DEFENSE DESPITE EXPRESSING A DESIRE TO TESTIFY.

POINT II

DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING BASED UPON HIS PRIMA FACIE SHOWING THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND INTERVIEW DEFENDANT'S CHILDREN.

POINT III

THE CUMULATIVE EFFECT OF THE REMAINING ARGUMENTS DESERVE EX[]PLORATION AT AN EVIDENTIARY HEARING.

We review the legal conclusions of a PCR court de novo, but generally defer to its factual findings when those findings are "supported by adequate, substantial and credible evidence." State v. Harris, 181 N.J. 391, 415-16 (2004) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). When an evidentiary hearing has not already been held, we may conduct a "de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. However, we review a trial court's decision to deny a PCR petition without an evidentiary hearing for an abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

To succeed on an IAC claim, a defendant must satisfy the two-prong test enunciated in Strickland[2] by a preponderance of the evidence. State v. Gaitan, 209 N.J. 339, 350 (2012). Under the first Strickland prong, a defendant must show counsel's performance "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. Because a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citation omitted). "The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Marshall, 123 N.J. 1, 165 (1991)).

---

[2] The New Jersey Supreme Court adopted the Strickland test in State v. Fritz, 105 N.J. 42, 58 (1987).

To satisfy the second Strickland prong, a defendant must show counsel's alleged "deficient performance prejudiced the defense." 466 U.S. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691. Importantly, failure to satisfy either Strickland prong requires the denial of a PCR petition. Id. at 700.

Trial counsel may be ineffective if counsel fails to conduct an adequate pre-trial investigation. Preciose, 129 N.J. at 464; State v. Petrozelli, 351 N.J. Super. 14, 22-23 (App. Div. 2002). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." State v. Porter, 216 N.J. 343, 353 (2013) (alteration in original) (quoting State v. Chew, 179 N.J. 186, 217 (2004)). Counsel's failure to do so will "render the lawyer's performance deficient." Chew, 179 N.J. at 217 (quoting State v. Savage, 120 N.J. 594, 618 (1990)). "[W]hen a petitioner claims [a] trial attorney inadequately investigated [the] case, [the petitioner] must assert the facts that an investigation would have

14

revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Porter, 216 N.J. at 353 (first alteration in original) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

The cumulative effect of trial errors may warrant reversal when it "casts doubt on the propriety of the jury verdict that was the product of that trial." State v. Jenewicz, 193 N.J. 440, 474 (2008). Reversal may be justified when the cumulative effect of a series of errors is harmful, even if each error itself is harmless. Ibid. "[T]he predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007).

A defendant is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. Cummings, 321 N.J. Super. at 170. To obtain an evidentiary hearing, a defendant must establish, by a preponderance of the evidence, a prima facie case for relief, material issues of disputed fact, and show that an evidentiary hearing is necessary to resolve the claims. R. 3:22-10(b).

"A 'prima facie case' requires that a defendant 'demonstrate a reasonable likelihood that [their] claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits[,]' . . . and must be

supported by 'specific facts and evidence supporting [their] allegations.'" State v. Peoples, 446 N.J. Super. 245, 254 (App. Div. 2016) (second alteration in original) (quoting Porter, 216 N.J. at 355). "If the [PCR] court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)). Also, if a defendant's "allegations are too vague, conclusory, or speculative," the defendant is "not entitled to an evidentiary hearing." Porter, 216 N.J. at 355 (first quoting Marshall, 148 N.J. at 158). A defendant "must do more than make bald assertions that [the defendant] was denied the effective assistance of counsel. [A defendant] must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

Guided by these standards, we have no reason to disturb the February 9, 2022 order, and affirm the order substantially for the reasons stated by the PCR judge. Moreover, we specifically reject defendant's argument that reversal of the February 9 order is warranted due to the PCR judge's purported failure to address trial counsel's failure to call defendant as a witness. That is because defendant's contention that he wished to testify at trial is not only belied by the

16

record, but unsupported by any certification he submitted with his PCR petition.

In fact, the PCR judge recounted at length the colloquy between the trial judge and defendant, confirming defendant understood he had a right to testify and chose not to do so. Defendant's election to not testify also was memorialized in a signed waiver, which the trial judge admitted as evidence of defendant's "knowing and voluntary decision not to testify." Therefore, we decline to disturb the PCR judge's specific finding that "defendant elected to not testify."

We also have no reason to question the judge's findings that: (1) "[t]here [wa]s nothing more . . . defense counsel could have done to prevent a guilty verdict in light of defendant's own admission"; (2) "there was nothing . . . trial counsel did or did not do which could have changed the trial outcome"; and (3) "[a]ll of the arguments raised by . . . defendant in []his PCR application [we]re, at best, speculative." These findings are amply supported on the record. Thus, the PCR judge correctly concluded defendant failed to establish a prima facie case of IAC under Strickland, and that any alleged errors by trial counsel, individually or cumulatively, did not establish a basis for PCR relief. Therefore, defendant was not entitled to an evidentiary hearing.

Any remaining arguments advanced by defendant lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-1836-21